## THE CARL FREDERICK.

### THE ENOCH TALBOT.

### SUNSET TELEPHONE & TEL. CO. v. THE CARL FREDERICK and THE ENOCH TALBOT.

*(District Court, N. D. California. December 5, 1887.)*

1. COLLISION—WITH SUBMARINE CABLE—DRAGGING ANCHOR.
   Where a ship has been lying at anchor in one spot for 18 days, and suddenly, in the night, begins dragging, and it afterwards appears that a kedge which had been lost had so fouled her anchor as to wrap round the chain, and cause the anchor to lose its hold, the accident must be ascribed to the peril of the sea.
2. SAME.
   When a ship drags her anchor by a peril of the sea, and it does not appear that the dropping of a second anchor would have been of any avail, and there is no evidence to show want of reasonable skill and diligence on the part of the captain, the vessel is not liable.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty.    Libel for damages.

The Sunset Telephone & Telegraph Company filed a libel against the ships Carl Frederick and Enoch Talbot, alleging that by carelessness and mismanagement they had dragged their anchors against the submarine cable of the libelant, and had broken it.

*Pillsbury & Blanding*, for libelant.

*Milton Andros*, for claimants.

HOFFMAN, J.    I have carefully reconsidered the evidence in these cases, and have come to the conclusion that the judgment heretofore rendered was erroneous.    That the cause of the accident was the fouling of the Enoch Talbot's anchor with a kedge, which had been lost or abandoned by some vessel, and which was lying on the bottom of the bay, unknown to and unsuspected by any one, is, I think apparent.    When the anchor was hove up, after the accident, it came to the surface *crown up;* and with the chain so wound around it as to deprive it of all efficacy as an anchor, except from its mere dead weight.    It is suggested by the advocate for the libelant, that there is no proof that this fouling occurred before the Talbot began to drag.    There is, of course, no direct proof, because ocular observation was impossible.    But to what other cause can we attribute the dragging of the ship?    There was no high wind or sea.    The ebb-tide was running, however, with unusual force. There was nothing, therefore, in the nature of a *vis major*, which could have caused a well-anchored ship to break from her moorings.    She had lain at the same place for 18 days, when suddenly, on the night of August 7th, the second mate, who kept the anchor watch, observed that she was dragging.    The only probable explanation of this circumstance is that her anchor had fouled, and lost its hold on the bottom, which, in fact, proved to be the case.    To suppose that this occurred after she began to drag is to leave the dragging wholly unexplained and inexplicable.    But the condition in which the anchor and chain were found, when subsequently hove up, seems to demonstrate that the fouling must have occurred before, and not after, the dragging commenced, and was in fact the cause of it.    The condition of the anchor and chain was illustrated in court, by the exhibition of a model.    From the number of turns which the chain had taken around the stock and crown it was apparent that the ship must have swung to the tide more than once, after the kedge was picked up; a fact inconsistent with the idea that the kedge was picked up after she began to drag, and when she was drifting to the ebb-tide.

If then, the fouling of the anchor was the true cause of the accident, the collision must be ascribed to a peril of the sea; for such an unusual and unforeseen occurrence is like striking on an unknown or sunken rock, or a derelict wreck,—an accident for the consequences of which the ship is not responsible.    But the master of a vessel, even though the cause of the accident may be a peril of the sea, is nevertheless bound to the exercise of reasonable care and nautical skill to avoid or mitigate its injurious consequences.    The only fault charged upon the master in this case is

that he did not let go his second anchor. The second mate seems to have thought this advisable. But the captain's judgment was that he had not room enough to give her sufficient chain to bring her up before striking the Carl Frederick. He further says the anchor would have dropped over the chain of the latter vessel, and would have had no effect. Both the captain and the second mate agree that the second anchor, if dropped, could not have prevented the collision nor the subsequent drifting of both vessels down the bay, to the vicinity of Blossom rock. This opinion is confirmed by the fact that when the master did let it go, because, as he says, he did not like to go on the rock with an anchor on his bow, it had no effect whatever, and the vessels continued to drag until brought up by a change in the tide. When the primary cause of disaster is shown to be a peril of the sea, the proofs should be clear that it might have been prevented by the exercise of reasonable skill and diligence. Error of judgment ought not to create a liability, unless the error be such as to show incapacity, or the want of that degree of professional skill which reasonably may be exacted of a ship-master. It must also plainly appear that but for that error the damage would have been avoided, or appreciably mitigated.

I do not consider that the proofs show that the master in this case committed any error disclosing a want of reasonable skill and diligence. I think, on the contrary, that the preponderance of proof is in favor of the conclusion that the dropping of the second anchor would have been wholly ineffectual to prevent or modify the injurious consequences of the accident. Libel dismissed.